IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN THOMAS TALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Case No. CIV-14-853-D |
| | ) | |
| TIME, INC., d/b/a Sports Illustrated Magazine, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# **O R D E R**

Defendants Time, Inc., George Dohrmann, and Thayer Evans have filed a Motion to Dismiss [Doc. No. 8] pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a response, and Defendants have replied. Thus, the Motion is fully briefed.

In this diversity case removed from state court, Plaintiff John Thomas Talley claims that Time, Inc. d/b/a Sports Illustrated Magazine ("Sports Illustrated" or "SI") and its employees or agents published a magazine article that placed Plaintiff in a false light and invaded his privacy with malice. *See* Petition [Doc. No. 1-1] (hereafter, "Complaint"). Defendants argue that, for multiple reasons, Plaintiff has failed to allege a plausible false light invasion of privacy claim. First, they argue that Plaintiff does not plausibly allege that the light in which he was placed is provably false or highly offensive. Second, they argue that Plaintiff cannot show the underlying statements that allegedly created the false light are either materially false or highly offensive so as to be actionable. Third, they argue that the facts alleged in the Complaint fail to plausibly support an inference of actual malice, as

required for a false light claim. Finally, they argue that Plaintiff's false light claim is not plausible because he does not claim to have suffered emotional distress or special damages. Plaintiff takes issue with each of these arguments.

The Court examines the parties' arguments in light of the factual allegations in the Complaint, federal pleading standards, and the elements of a false light invasion of privacy claim under Oklahoma law.[1]

### Plaintiff's Allegations

The Complaint states that Plaintiff has worked since August 1993 as an area representative for the Oklahoma Fellowship of Christian Athletes ("OFCA"), which is a local affiliate of the Fellowship of Christian Athletes. The Complaint explains the mission of these non-profit organizations is to reach out and minister to coaches and athletes at all levels of competition to promote Christian values and beliefs. This mission is carried out "through the advent of prayer and Bible related programs, community outreaches, camping activities and school campus efforts aimed specifically at coaches and athletes." *See* Complaint, ¶ 12. Plaintiff alleges that his employment by OFCA in north central Oklahoma covers Stillwater, Oklahoma State University ("OSU"), and the surrounding areas, and as a result, he has had extensive interaction with OSU student athletes, including participants in the OSU football program. As part of this work, Plaintiff allegedly would engage OSU students "in team building exercises and community work efforts for minimal compensation." *Id.* ¶ 13.

---

[1] The parties agree that Plaintiff's action is governed by Oklahoma substantive law.

Plaintiff explains that Sports Illustrated publishes its sports magazine for national print distribution to millions of subscribers and readers, and promotes its publications through a website. During September, 2013, Defendants published in SI magazine a five-part series of articles regarding the OSU football program that allegedly made specific, malicious statements about Plaintiff. The articles "alleged grave improprieties in the management and administration of the OSU football program and certain individuals affiliated with the players in differing capacities," including Plaintiff. *Id*. ¶ 16. The main accusation against Plaintiff, and the subject of this action, is that he "'grossly overpaid . . . [OSU football players] for jobs they did or compensated them . . . for jobs they didn't do.'" *Id*. Plaintiff complains that the SI article portrayed him "as an overzealous 'booster' who made systematic improper financial contributions to OSU's football players." *Id*. ¶ 17. He cites five examples of false claims allegedly made by individual players and reported in the articles, and two examples of false statements allegedly attributed to him, as set forth in the discussion *infra*. As a result of the publication, OSU allegedly suspended Plaintiff's outreach activities with its student athletes.

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* The Supreme Court in *Iqbal* explained the plausibility standard this way:

> A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> * * * *
>
> . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more that the possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

556 U.S. at 678-79 (quoting *Twombly*, 550 U.S. at 555-57) (citations omitted). Thus, in assessing plausibility, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

In making this assessment, the Court "accept[s] the well-pleaded factual allegations of the complaint as true," but in this case, the Court may also consider the SI articles because they "'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (published works considered in deciding sufficiency of copyright infringement claim). Further, "the legal effect of the

4

[published articles] are determined by the works themselves rather than by allegations in the complaint." *Jacobsen*, 287 F.3d at 942.[2]

**Discussion**

A false light invasion of privacy claim under Oklahoma law requires a plaintiff to allege and prove: 1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light; 2) the false light in which the plaintiff was placed "would be highly offensive to a reasonable person;" and 3) the defendant "had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *See Colbert v. World Publ'g Co.*, 747 P.2d 286, 290 (Okla. 1987) (internal quotation omitted); *see also Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 719 (10th Cir. 2000); Restatement (Second) of Torts, § 652E (1977).

### I. Was the Light in Which Plaintiff Was Placed Provably False or Highly Offensive?

Plaintiff alleges that the SI article portrayed him as an "overzealous booster" and a "hypocrite" who was "not a legitimate Christian college outreach leader," and "a dishonest man" who was "a cheat . . . and a fraud." *See* Complaint, ¶¶ 17, 22, 23, 26 and 27. Although the article does not directly say any of those things, that is the inference Plaintiff alleges a reader would draw from the first installment of the SI series, "The Dirty Game," entitled "Part I – The Money." The article states that Plaintiff's name was well known around the

---

[2] Except for the SI articles themselves, the Court is limited to the four corners of the Complaint and, therefore, disregards any facts argued in Plaintiff's brief that do not appear in his pleading.

OSU campus as a generous supporter of the football program whom a player could call if he needed a job, and it identifies five former players who described instances in which Plaintiff allegedly overpaid players for work, paid players for speaking engagements, or compensated players who did no work. The article says nothing about Plaintiff's religious beliefs or work; it merely refers to his position with OFCA.

Viewing the allegations of the Complaint and the contents of the SI article in the light most favorable to Plaintiff, it cannot be said that the article portrayed Plaintiff as a hypocrite, an un-Christian religious leader, or a fraud. Assuming that it did, however, as argued by Defendants, none of these characterizations can be objectively proved to be true or false. On the other hand, the Court agrees with Plaintiff that the article could be read to paint him as a dishonest man and a cheat – a person who secretly paid college athletes in violation of NCAA rules. This factual portrayal of Plaintiff is capable of being proved to be demonstrably false.

If Plaintiff could show that the SI article placed him in a false light, he must still show that the light in which he was placed is "highly offensive to a reasonable person." *See McCormack v. Oklahoma Publ'g Co.*, 613 P.2d 737, 741 (Okla. 1980). A cause of action for false light invasion of privacy exists only where there is a major misrepresentation of a person's character, history, activities, or beliefs such that serious offense may reasonably be expected to be taken by a reasonable man in his position. *See Restatement (Second) of Torts* § 652E, cmt. c. The Court agrees with Defendants that implications of being an "overzealous booster," a "hypocrite" or "not a legitimate Christian" leader are not objectively highly

offensive. However, Plaintiff's claim that a community leader whose work is built on a "moral platform of integrity and excellence" on behalf of OFCA (Complaint, ¶ 23) was portrayed as a dishonest man and a cheat could be viewed by a reasonable person in his position as sufficiently offensive to be actionable.

## II. Are the Underlying Statements of Which Plaintiff Complains Materially False?

Plaintiff alleges that five statements in the article were false. The first two statements are as follows:

> (a) Carter, Girtman, Johnson and Thomas Wright each say that Talley either grossly overpaid them for jobs they did or compensated them for jobs they didn't do. They allege that numerous other players benefitted from Talley's generosity too. Girtman says Talley paid him $1,500 to $2,000 every two weeks during one summer to work on his horse ranch, far more than the job was worth. [*See* Complaint, ¶¶ 16, 17(a).]
>
> (b) Carter says he and a few other players were once paid by Talley to help shoe horses. Asked if the players did the work, Carter says, "Are you kidding? Most of us hadn't even seen a horse before." [*Id.* ¶ 17(c).]

*See* Def.'s Mot. Dism. Compl., Ex. 1 [Doc. No. 8-1], p.9 (ECF page numbering). Plaintiff does not allege that SI's four sources did not actually say what was attributed to them. He merely denies that what they said was true. Yet the SI article reported Plaintiff's denial:

> Talley says that . . . [players] frequently did work on his ranch, noting he always paid an hourly wage. . . . "I have paid lots of players to work on my ranch," Talley says. "But I would never pay someone not to work."

*Id*. The article also reported that the OSU compliance office had "cleared [Plaintiff] to employ athletes on his ranch." *Id*. When, as here, allegations and denials are accurately

7

reported, the publication is not considered to be "false." *See*, *e.g. Green v. CBS*, 286 F.3d 281, 284 (5th Cir. 2002) ("In cases involving media defendants, such as this, the defendant need not show the allegations are true, but must only demonstrate that the allegations were made and accurately reported."); *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 568-69 (8th Cir. 2001) (accurate reports of statement were not actionable, irrespective of whether implications and allegations themselves were actually true); *Janklow v. Newsweek, Inc.,* 759 F.2d 644, 649 (8th Cir. 1985) (no claim for libel based on report of child's allegation of rape); *modified on reh'g*, 788 F.2d 1300 (8th Cir. 1986). The Oklahoma Supreme Court has cited *Green*, *Campbell*, and *Janklow* approvingly. *See Magnusson v. New York Times Co.*, 98 P.3d 1070, 1077 n.28, 1079 n.37 (Okla. 2004). Because Plaintiff does not allege that Defendants inaccurately reported the sources' accusations, and because the SI article included Plaintiff's denials and explanations, the cited statements cannot be considered materially false.

Plaintiff relies on three additional statements in the SI article as follows:

(c) Talley could also be counted on to set up speaking gigs for players, paying $100 for a 15- to 20-minute talk. "You might get more depending on who you were," says Shaw. [*See* Complaint, ¶ 17(b).]

(d) Quarterback Aso Pogi (1999 to 2002) says he and another player lived at Talley's ranch one summer rent-free. In retrospect Pogi says, "It's a big deal. I was the starting quarterback." [*Id*. ¶ 17(d)-(e).]

(e) Talley says that he sometimes paid players a fee for speaking engagements . . . [and] he cleared the speaking fees and the hourly employment through the university's compliance office. [*Id*. ¶ 17 (f)-(g).]

8

*See* Def.'s Mot. Dism. Compl., Ex. 1 [Doc. No. 8-1], p.9 (ECF page numbering). Plaintiff alleges that neither he nor former OSU quarterback Pogi said what is attributed to them. Defendants contend these statements are not materially false.

"[A] materially false statement is generally one that 'would have a different effect on the mind of the reader [or listener] from that which the . . . truth would have produced.'" *Air Wisconsin Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 864 (2014) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991); alteration in *Air Wisconsin*). Here, Plaintiff is quoted in the article as making a statement he admits is true that "Pogi lived at his ranch and had to work to cover his rent." *See* Def.'s Mot. Dism. Compl., Ex. 1 [Doc. No. 8-1], p.9 (ECF page numbering). As Defendants assert, the difference between reporting that Pogi did not pay money to live on the ranch and reporting that he did not have to pay but did some undefined amount of work in lieu of rent is not material. *Cf. Air Wisconsin*, 134 S. Ct. at 864-65 (statement that pilot "might be armed" when it was known only that he was authorized to be armed, and statement that pilot was mentally "unstable" when he was irate and had "blown up" in a professional setting, were not materially false).

The Court reaches a different conclusion regarding the reported statement by Plaintiff that he paid players for speaking engagements. Plaintiff asserts the speakers simply "were reimbursed reasonable food and gas expenses" for their engagements. *See* Complaint, ¶ 32. The Court rejects Defendants' argument that the difference between payment and reimbursement is not material. In the context in which the reported statement appears – between a paragraph relating players' accusations that Plaintiff paid for speaking

9

engagements and another one reporting that the OSU compliance office had twice warned Plaintiff against paying for speaking engagements – the reader could understand that Plaintiff had admitted engaging in a prohibited practice, rather than merely reimbursing speakers for out-of-pocket expenses. Therefore, this statement could be found to be materially false.

### III. Do the Facts Alleged in Plaintiff's Complaint Show More Than the Mere Possibility of Actual Malice?

A plaintiff making a claim for false light invasion of privacy must allege that the defendant published with "actual malice," that is, that the publisher had knowledge of, or acted in reckless disregard as to, the falsity of the publicized matter and the false light in which the plaintiff would be placed. "Actual malice" means publication of a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U. S. 254, 279-80 (1964). The Supreme Court applied this standard of fault to false light cases in *Time, Inc. v. Hill*, 385 U.S. 374 (1967), and the Oklahoma Supreme Court has adopted it for false light cases in this state. *See Colbert*, 747 P.2d at 291; *see also Zeran*, 203 F.3d at 720. To prove reckless disregard, the Oklahoma Supreme Court has said that "[t]he plaintiff must demonstrate actual knowledge of probable falsity," *Jurkowski v. Crawley*, 637 P.2d 56, 60 (Okla. 1981), or "a high degree of awareness of [a false statement's] probable falsity." *Herbert v. Oklahoma Christian Coalition*, 992 P.2d 322, 328-29 (Okla. 1999). The test is a "subjective one" measured by the defendant's state of mind rather than by what a reasonably prudent publisher would have done, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989), and even conduct that constitutes

an extreme departure from responsible journalism does not necessarily establish reckless disregard. *Id.* at 664-66; *see Jurkowski*, 637 P.2d at 62. Indeed, the Oklahoma Supreme Court has held that reckless disregard is not 1) a failure to conduct a thorough investigation, 2) negligence, 3) a showing that the statement was derogatory or untrue, 4) ill will or a desire to injure, or 5) reliance on an unverified statement of a third party. *Herbert*, 992 P.2d at 328-29.

Plaintiff's pleading contains formulaic allegations of "actual malice" and conclusory allegations that Defendants "knowingly" or "intentionally" or "purposely" published false statements or misrepresented the facts. *See* Complaint, ¶¶ 17, 22, 25-31. These conclusory statements are disregarded for purposes of determining the sufficiency of a complaint under Rule 12(b)(6). *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The focus of Plaintiff's allegations offered to show "actual malice" is that Defendants elected to believe the statements of multiple sources whose credibility and motives should have been suspect, despite his denials. Plaintiff also complains that Defendants failed to access payment records available through the OSU compliance office, and he alleges that what SI reported about him is "highly improbable" given his work as a "Christian college outreach leader." *See* Complaint, ¶ 26. But his pleading contains no factual allegations that would plausibly support an inference that Defendants recklessly disregarded the truth – that is, had actual awareness of probable falsity – or actually knew that what they published was not true. *See Revell v. Hoffman*, 309 F.3d 1228, 1233 (10th Cir. 2002) (publishing statements that were "inherently improbable" did not establish actual malice).

### IV. Must a Plaintiff Suffer Severe Emotional Distress or Special Damages to Support a False Light Claim?

In *Colbert*, the Oklahoma Supreme Court recognized that the cause of "action for false light invasion of privacy is a product of the same societal need as the tort of outrage or intentional infliction of emotional distress" and said that it would "lie only in the presence of extreme and outrageous conduct." *Colbert*, 747 P.2d 292. The court has not held, however, that a plaintiff asserting a false light claim must allege and prove severe emotional distress or special damages. Thus, Plaintiff's Complaint is not deficient for failing to allege such damages, as argued by Defendants. Defendants correctly point out, however, that Plaintiff does not allege that he suffered *any* emotional distress or damage as a result of Defendants' conduct, which is necessary to support his false light claim.

### Conclusion

For these reasons, the Court finds that Defendants are entitled to dismissal of Plaintiff's pleading for failure to state a claim upon which relief can be granted. The Court further finds that the dismissal should be without prejudice to the filing of an amended complaint.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Complaint [Doc. No. 8] is GRANTED. Plaintiff may file an amended complaint within 21 days from the date of this Order.

IT IS SO ORDERED this  11th  day of February, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE