IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

**John Thomas Talley,**

      **Plaintiff,**

v.

**Time Inc., d/b/a Sports Illustrated Magazine,** *et al.***,**

      **Defendants.**

Case No. CIV–14–00853–D

### DEFENDANTS' *DAUBERT* MOTION IN LIMINE AND MOTION TO STRIKE REPORT OF TERRY J. WESTEMEIR, AND SUPPORTING BRIEF

The defendants, Time Inc., George Dohrmann, and Thayer Evans, move to strike the expert report of the plaintiff's proposed expert, Terry J. Westemeir, and move *in limine* to exclude his testimony at trial or from being considered in opposition to the defendants' summary judgment motion. Westemeir's seven–page report, attached as Exhibit 1, does not satisfy the requirements of Fed. R. Civ. P. 26(a)(2), and indeed is no report at all. In addition, his assumed testimony is not relevant or reliable as required by Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999). For these reasons, the testimony of Westemeir is inadmissible. In support of this motion, the defendants offer the following arguments and authorities.

The plaintiff's final list of experts and their expert reports were filed on June 5, 2017, the deadline fixed by the court in its amended scheduling order. *See* Order [doc. no. 47]. The plaintiff listed Terry J. Westemeir to opine about how the five–part report in *Sports Illustrated* ("*SI*") entitled "The Dirty Game" (1) increased or maintained *SI*'s

subscription levels, (2) enhanced *SI* sales, (3) impacted *SI*'s profitability and earnings, (4) impacted *SI* advertising dollars and (5) impacted the print version and *SI*.com's programming. Exh. 1 at 5–6.

However, Westemeir's opinions should be excluded for several reasons. His report violates Rule 26(a)(2); Westemeir identifies no education, experience, or training that qualifies him to opine about how the *SI* article ***caused*** any change in *SI*'s profitability, subscription levels, or earnings; and his opinions regarding "the financial and economic impact, if any, realized by Time Inc." resulting from publication of the article, Exh. 1 at 1, are in any event wholly irrelevant to the plaintiff's claim of false light invasion of privacy.

## I.     Westemeir's report violates Rule 26(b)(2).

Under Rule 26(a)(2)(B), an expert report must have 12 attributes:  The report must be (1) written, (2) prepared by the witness and (3) signed by him.  The report must contain (4) a complete statement of all opinions to be expressed by the expert witness and (5) a complete statement of the bases and reasons for the opinions.  The report must contain (6) the information considered by the witness in forming the opinions and (7) any exhibits to be used as a summary of or support for those opinions.  The report must state (8) the qualifications of the witness and list (9) all publications by the witness within the preceding 10 years and all cases within the last four years in which the witness has (10) testified as an expert at trial or (11) testified as an expert by deposition.  Finally, the report must state (12) the compensation to be paid to the expert.  *See Anderson v. Hale*, No. CIV-02-0113-F, 2002 WL 32026151, *2 (W.D. Okla. Nov. 4, 2002).

Westemeir's report fails completely to provide the heart of the information required by Rule 26((a)(2)(B)—items 4–5 and 7. The report offers no actual opinions. Instead, Westemeir says his analysis is "incomplete" and wholly dependent on information he does not have. Exh. 1 at 5. Not surprisingly, because he does not have that information (despite the fact this suit has been pending for nearly three years), Westemeir cannot identify the facts or data actually considered or the methodology used in arriving at yet–to–be–formulated opinions. Simply stated, Westemeir's report is not compliant with Rule 26((a)(2)(B) at all.

Rule 26(a)(2)(B) requires that the expert reports be complete and contain all of the information specified in the rule so that opposing counsel is not forced to depose an expert in order to avoid surprise at trial. *See* Committee Comment to 1993 Amendments to Rule 26(a)(2). A preliminary report, by definition, is not a complete report. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952–953 (10th Cir. 2002), *cert. denied,* 537 U.S. 1066. The information required to be set forth in an expert report was explained in *Salgado v. GMC*, 150 F.3d 735, 742 n.6 (7th Cir. 1998), cited with approval by the Tenth Circuit in *Kern River Gas Transmission Co. v. 6.17 Acres of Land*, 156 Fed. Appx. 96, 102 (10th Cir. 2005) (emphasis added), as follows:

> Rule 26(a) expert reports must be "detailed and complete." Fed. R. Civ. P. 26 Advisory Committee's note; *see also Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 57, 136 L. Ed. 2d 20, (1996). A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor. Fed. R. Civ. P. 26 Advisory Committee's note: [citation omitted] ***The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and***

3

> *moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.* See *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), *cert. denied*, 516 U.S. 822, 116 S. Ct. 84, 133 L. Ed. 2d 42, (1995). ***Expert reports must not be sketchy, vague or preliminary in nature***. Fed. R. Civ. P. 26 Advisory Committee's note; *see also Sierra Club*, 73 F.3d at 571. Disclosures must not be used as a means to extend a discovery deadline. *See id.* Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.

Under Fed. R. Civ. P. 37(c)(1), the court may strike a party's expert designation and preclude testimony at trial from those experts who did not provide a complete expert report in compliance with Rule 26(a)(2). Rule 37(c)(1) provides that, if a party fails to provide the information . . . required by Rule 26(a) . . . , "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Jacobson*, 287 F.3d at 952–53 (trial court required to exclude testimony of expert where report unjustifiably failed to meet requirement of rule unless deficiencies are harmless); *Hayes v. Wal–Mart Stores, Inc.*, 294 F. Supp. 2d 1249 (E.D. Okla. 2003) (same); *Anderson v. Hale*, No. CIV-02-0113-F, 2002 WL 32026151, *4 (W.D. Okla. Nov. 4, 2002) (same); *Palmer v. Rhodes Mach.*, 187 F.R.D. 653, 656 (N.D. Okla. 1999) ("The requirements of Rule 26(a) are mandatory as to any expert retained to testify. If the expert is unable or unwilling to make the disclosures he should be excluded as a possibility for retention as an expert witness in the case.").

In *Jacobsen*, 287 F.3d 936, the Tenth Circuit held that "a district court can allow evidence violating Rule 26(a) only if the violation was justified or harmless," and it

stated that a court should consider the following factors in determining if the violation was justified or harmless:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Id*. at 953 (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)). With respect to the first factor, the court stated that, to avoid prejudice, the opposing party "needed to know the substance of the experts' testimony" and that prejudice is established where the report is stated to be preliminary and subject to revision. *Id.* at 953. The court in *Jacobsen* determined that where expert reports indicated that percentages and calculations were preliminary and more refined calculations would be made, the introduction of expert testimony not contained in the expert reports would be prejudicial to the opposing party. *Id*.

The court stated that such prejudice results from a violation of the following purpose of Rule 26(a) expert reports:

> The reports are intended not only to identify the expert witness, but also "to set forth the substance of the direct examination." Fed. R. Civ. P. 26(a)(2) advisory committee note (1993). ***Such disclosure is necessary to allow the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses*.*"*** Id.

*Jacobsen*, 287 F.3d at 953 (emphasis added). Thus, to avoid prejudice, the opposing party must know the substance of the expert's testimony.

The deficiencies in Westemeir's report in violation of Rule 26(b)(2) are neither

5

justifiable nor harmless, and indeed they are prejudicial to the defendants. *Cf. Hayes v. Wal–Mart Stores, Inc.*, 294 F. Supp. 2d 1249 (E.D. Okla. 2003) (striking expert report and excluding testimony for failure to comply with Rule 26(a)(2)(B)); *Anderson v. Hale*, No. CIV–02–0113–F, 2002 WL 32026151, *4 (W.D. Okla. Nov. 4, 2002) (same).[1] The plaintiff's failure to have his expert abide by the requirements of Rule 26(a)(2)(B) is reason enough to exclude Westemeir's testimony.

## II. Westemeir is not qualified as a "causation" expert and his opinions would not assist the trier of fact as required by *Daubert/Kumho*.

The Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), establish a "gatekeeper" function for trial judges under Fed. R. Evid. 702. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001); *Goebel v. Denver & Rio Grande Western R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000), *after remand*, 346 F.3d 987 (10th Cir. 2003); *Taber v. Allied Waste Systems, Inc.*, No. CIV–13–773–D, 2015 WL 1119750 (W.D. Okla. Mar. 11, 2015), *aff'd*, 642 Fed. Appx. 801 (10th Cir. 2016); *Trotter Overhead Door, Inc. v. Trotter Doors, LLC*, No. CIV–11–1348–HE, 2013 WL 4520242 (W.D. Okla. Aug. 26, 2013); *Anderson v. Hale*, No. CIV–02–0113–F, 2002 WL 32026151 (W.D. Okla. Nov. 4, 2002).

---

[1] The plaintiff should be bound to and limited by the expert report submitted by the court's deadline. If the plaintiff were allowed to submit a complete report months after the deadline, the defendants would then have to decide whether to retain expert witnesses to rebut the plaintiff's expert, and the defendants would have to submit expert reports to the plaintiff. Additionally, the defendants would need time to depose the plaintiff's expert and file any necessary *Daubert* and dispositive motions long after the court–imposed deadline of July 5, 2017.

6

"The district court's admissibility determination has two parts. First, the court must determine whether the expert is qualified. If sufficiently qualified, the court must then determine whether the expert's opinion is reliable and relevant in that it will assist the trier of fact." *Taber*, 2015 WL 1119750 at *5. The second part involves assessing the reasoning and methodology underlying the expert's opinion and determining whether it is reliable in the context of the particular facts and issues in the case. The relevance evaluation includes the question of "fit," that is, determining whether the expert opinion is sufficiently tied to the facts of the case that the opinion will assist the trier of fact. *Anderson* at *5. When an expert's testimony's factual basis, data, principles, or methods of application are called sufficiently into question, the trial judge must determine whether the testimony has a reliable basis. *Kumho,* 526 U.S. at 149. "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Goebel v. Denver & Rio Grande Western R.R.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999). The proponent of expert testimony bears the burden to demonstrate the admissibility of the testimony. *Navarrete v. Wiebe*, No. CIV–13–708–D, 2014 WL 3732667, *1 (W.D. Okla. Jul. 25, 2014).

Westemeir's report intimates that he expects to opine that *SI*'s financial performance improved following publication of the article "The Dirty Game." It also suggests that he will try to do more—he will opine that the article (as opposed to other factors) ***caused*** that improvement.[2]

---

[2] Courts have recognized that a chronological rendition of events whereby one event occurred before another event does ***not*** mean that the first event caused the second event.

7

Fed. R. Evid. 702 provides that an expert may testify in the form of opinion only if, among other things, his specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue. Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). It does not appear from Westemeir's report that he has any specialized knowledge that would assist the trier of fact on the causation issue he proposes to explain as an expert.

With respect to objective facts such as *SI*'s financial performance before and after publication of the article—for example, raw changes in the number of subscriptions or the number of clicks on a website or the number of dollars of revenue generated—a jury would not require expert testimony to understand those facts. With respect to what *caused* that change in financial performance, an expert—if qualified—might assist the trier of fact if the issue were relevant.[3] However, Westemeir's report does not indicate that he has any qualification to express opinions about causation. That is, he has listed no training, experience, knowledge, education, or skill (such as having a career in the business side of magazine publishing) that qualifies him to opine that the publication of a particular article in a weekly magazine containing many articles caused any change in

---

That form of reasoning represents a logical fallacy known as the *post hoc ergo propter hoc* (after this and therefore because of this) fallacy. A conclusion based on this reasoning is not a reasonable inference but is mere speculation and conjecture. *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 n.8 (10th Cir. 1987).

[3] As discussed below, the financial performance of Time Inc. or its brand, *SI*, is wholly irrelevant.

financial performance (which is normally measured only on a quarterly or annual basis).

In *Lifewise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004), the appellate court upheld the district court's exclusion of testimony by the plaintiff's chief executive officer as an expert witness on damages. For the CEO to qualify as an expert, he was required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Id.* at 928 (quoting *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1408 (10th Cir. 1990) (quoting *Bridger v. Union Ry. Co.*, 355 F.2d 382, 387 (6th Cir. 1966)). In excluding the CEO as an expert, the court observed that despite his business acumen, he had no training in the subject on which he was to opine, had never testified as an expert or prepared a report on the subject, had never taught a course or lectured on that subject, and never published any articles about it. *Id.* at 928. Likewise, Westemeir may be experienced in accounting, but that does not mean that he is qualified to opine on all matters that involve interpretation of financial data, let alone interpretation of data to opine that a single article in a weekly magazine caused a change in that data. *Cf. Taber v. Allied Waste Systems, Inc.*, 642 Fed. Appx. 801, 807 (10th Cir. 2016) ("An expert who 'possesses knowledge as to a general field' but 'lacks specific knowledge does not necessarily assist the jury.'") (quoting *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998)). In this particular case, Westemeir has listed no training, education, or skill that qualifies him to testify about causation, and the plaintiff has not demonstrated qualifications to opine on that subject.

Westemeir has also failed to disclose any tested methodology he will use to arrive

at his opinions despite Rule 702's insistence that an expert's methodology—how he moves from facts or data to a conclusion—is sound. The Advisory Committee comments to the 2000 amendments to Rule 702 state (emphasis added):

> If the witness is relying solely or primarily on experience, then ***the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts***. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). ***The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.***

Of course, as it should, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Goebel v. Denver & Rio Grande Western R.R.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)). Westemeir's report does not even state an opinion, let alone explain "the 'whys' and 'wherefores' by which that opinion is reached." *Hayes v. Wal–Mart Stores, Inc.*, 294 F. Supp. 2d 1249, 1250 (E.D. Okla. 2003). *See Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (expert testimony excluded where methodology was not in regular usage, was not peer–reviewed, has no uniform usage in the industry, and is capable of manipulation to achieve any desired result).[4]

---

[4] Because Westemeir does not articulate any opinions, the defendants (and the court) are left to speculate as to what they would be. If Westemeir were to opine that any improvement in Time Inc. or *SI*'s financial performance was caused ***solely*** by publication of the article, then such an opinion would be inherently unreliable. *See First Savings*

### III.  Westemeir's (presumed) opinions are irrelevant.

The plaintiff's claim is that the defendants' publication of the article invaded his privacy by placing him in a false light.  As the Oklahoma Supreme Court held in *Colbert v. World Pub. Co.*, 747 P.2d 286, 290 (Okla. 1987), "the interest to be vindicated is the injury to the person's [the plaintiff's] own feelings."  The financial performance of Time Inc. or *SI* before and after publication—even if Westemeir were qualified to opine about it—is wholly irrelevant to the measure of injury to the plaintiff's feelings.

### IV.  CONCLUSION.

Westemeir's expert report does not comply with Rule 26(a)(2)(B); and even if he is qualified to express opinions generally about matters of accounting, the opinions suggested by his report are not relevant and reliable.  His testimony should be excluded under Fed. R. Evid. 702 and 403 and by the principles of *Daubert/Kumho*.

---

*Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1085 (D. Kan. 2000) (excluding expert report as "inherently unreliable and purely speculative" where expert improperly attributed ***all*** losses to the defendant's allegedly unlawful acts, despite the presence of other obvious factors that could be significant to his analysis); *see also Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1504 (8th Cir. 1992). Westemeir's report does not suggest he has any peculiar insight into magazine publishing that would allow him to exclude various factors that might impact the magazine's financial performance.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

By: s/Robert D. Nelon
Robert D. Nelon, OBA #6610
Jon Epstein, OBA #13274
Elisabeth E. Muckala, OBA #21306
Chase Tower, Suite 2900
100 North Broadway
Oklahoma City, OK  73102-8865
Telephone:  (405) 553-2828
Facsimile:  (405) 553-2855
Email:  bnelon@hallestill.com
Email:  jepstein@hallestill.com
Email:  emuckala@hallestill.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Gary L. Richardson, OBA #7547
Charles L. Richardson, OBA #13388
Raymond Allred, OBA #
Richardson Richardson Boudreaux PLLC
7447 S. Lewis Ave.
Tulsa, OK 74136

/s/Robert D. Nelon

1520650.1:811373:02010